## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| BOYD OWENS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Civil No.  3:06-0426 |
| | ) | Judge Trauger |
| MURRAY, INC., | ) | |
| | ) | |
| Appellee. | ) | |

## MEMORANDUM

### INTRODUCTION

On February 8, 2006, the Bankruptcy Court, Marian F. Harrison, J., signed an Order

Granting the Motion for Summary Judgment of Debtor Murray, Inc. ("Order") and Findings of

Fact and Conclusions or Law in support of the Order entered in Bankruptcy Case No. 04-13611.

(D. Ct. D.E. 3 & 4).  As further described below, the matter resolved by the Order was the

objection of William Kaye, trustee and liquidating agent of the Murray Liquidating Trust , the

post-confirmation estate of Debtor Murray, to a Proof of Claim filed by Mr. Boyd Owens in the

amount of $180,000,000 for patent infringement.  Owens ("Appellant") has appealed (D.E. 9),

and Debtor Murray ("Appellee") has filed a response (D.E.. 11).  Hereinafter, for clarity, the

court will refer to Debtor Murray without further reference to Mr. Kaye or "Trustee."

This matter is before this court on appeal pursuant to 28 U.S.C. 158(a).

Appellant raises four issues on appeal.  First, Appellant contends that Appellee engaged

in a conspiracy related to a patent held by Appellant.  (Appellant's Br. 7).  Second, Appellant

contends that the Appellee infringed on his patent.  (Appellant's Br. 10).  Third, Appellant

-1-

contends that the Bankruptcy Court erred in granting summary judgment on the doctrine of laches and failure to join an indispensable third party. (Appellant's Br. 13). Fourth, Appellant demands a jury trial in the Bankruptcy Court. (Appellant's Br. 16).

The Bankruptcy Court granted summary judgement for Appellee on the issues of laches and failure to join an indispensable party, the Third issue raised on appeal. The Bankruptcy Court did not reach the other three issues on appeal, as Owens appears not to have presented those issues to the Bankruptcy Court. The Court views these three issues as being raised here for the first time.

After careful examination of all the submissions, the relevant statutes and case law, the court determines that the Order of the Bankruptcy Court should be affirmed in all respects.

PROCEDURAL HISTORY AND BACKGROUND

Although familiarity with the Bankruptcy Court docket is presumed, there are numerous filings in this matter. The court recites the following in this Memorandum for purposes of clarity.

On November 8, 2004, Murray, Inc. ("Debtor Murray") filed a Chapter 11 petition in the Nashville Division of the Bankruptcy Court for the Middle District of Tennessee, which was assigned case number 04-13611. Murray, Inc. manufactured power lawn equipment. On December 7, 2004, Mr. Boyd L. Owens ("Owens") filed a Proof of Claim, Form B10, numbered 16, ("Owens Claim") in the amount of $180,000,000 for patent infringement.[1] (Bankruptcy

---

[1] The subject patent is United States Patent No. 4,221,108 (the "'108 Patent") issued to Boyd L. Owens on September 9, 1980. (Statement of Undisputed Facts in Supp. Sum. J. Mot. Ex. A-1; Bankruptcy Court D.E. 1483).

-2-

Court D.E. 1483 Attach. #5 (Ex. C)).  Owens' patent covered a power lawn mower brake safety mechanism, which Murray allegedly infringed.

On August 10, 2005, Debtor Murray filed its Third Omnibus Objection to Certain Claims objecting to the Claim as having "No Basis."  (Bankruptcy Court D.E. 1164).  On September 20, 2005, Owens filed his Response to Debtor Murray's Third Omnibus Claims Objection. (Bankruptcy Court D.E. 1256).  On September 22, 2005, the Bankruptcy Court sustained Debtor Murray's objection to the Owens Claim.  (Bankruptcy Court D.E. 1267).  On September 23, 2005, the Bankruptcy Court confirmed Debtor Murray's Chapter 11 Plan of Liquidation ("Plan").[2]  (Bankruptcy Court D.E. 1276).

On October 19, 2005 a letter from Owens to Judge Harrison, captioned "'Proof of Claim' Comprehensive Package," was filed in the Bankruptcy Court.  (Bankruptcy Court D.E. 1430).[3] On November 8, 2005, the Bankruptcy Court held a hearing, at which Debtor Murray reported on the status of Owens' October 19, 2005 response.  (See Bankruptcy Court D.E. 1434).

On November 23, 2005, the Bankruptcy Court signed a Scheduling Order setting a briefing schedule and a hearing date of January 11, 2006 for disposition of the Owens Claim. (Bankruptcy Court D.E. 1473).  On November 29, 2005, Debtor Murray filed its Motion for Summary Judgment Against Boyd Owens' Claim, To Dismiss for Lack of Standing, Or To Limit and Estimate Mr. Owens' Claim Pursuant to 11 U.S.C. § 502(c) ("Motion" or "Debtor's

---

[2]  Debtor Murray's business was sold pursuant to § 363 as approved and ordered by the Bankruptcy Court on February 1, 2005.  (Bankruptcy Court D.E. 31).

[3]  This letter is docketed as "Statement filed by Brian K. Mays, CLA, Chief Legal Assistant, Laymen's Law Group for Boyd Owens" and is docketed as related to Owens' September 20, 2005 Response.

Case 3:06-cv-00426   Document 15   Filed 03/27/07   Page 3 of 27 PageID #: 240

Motion"), as further explained *infra*. (Bankruptcy Court D.E. 1482). (Debtor Murray also filed its Statement of Undisputed Facts, (D.E. 1483), and its Memorandum in Support, (D.E. 1484)). On December 21, 2005, Owens filed his Response to Debtor Murray's Motion for Summary Judgment. (Bankruptcy Court D.E. 1555). On December 27, 2005, Debtor Murray filed its Reply. (Bankruptcy Court D.E. 1559).

On January 11, 2006, the Bankruptcy Court held the scheduled hearing. No appearance was recorded for Owens; Mr. Paul G. Jennings. Esq. and Mr. Kevin T. Kramer, Esq. appeared for Debtor Murray.

At the conclusion of the hearing, the Bankruptcy Court ordered counsel for Debtor Murray to prepare a memorandum of the "undisputed material facts and legal conclusions." (Tr. Jan. 11, 2006 p.5). On January 27, 2006, complying with the Bankruptcy Court's instructions, Debtor Murray filed its memorandum of undisputed facts and legal conclusions. (Bankruptcy Court D.E. 1625, 1626). On January 30, 2006, Owens filed an Affidavit, as further discussed *infra*. (Bankruptcy Court D.E. 1628). On February 8, 2006, the Bankruptcy Court entered the Order granting Debtor Murray the relief prayed for. (Bankruptcy Court D.E. 1639). Filed with the Order were the Bankruptcy Court's Findings of Fact ("F.F.") and Conclusions of Law ("C.L.") In Support of the Court's Summary Judgment Dismissal of Boyd Owens' Claim. (Bankruptcy Court D.E. 1640).

## ANALYSIS

### STANDARD OF REVIEW

This court has jurisdiction to hear this appeal pursuant to 28 U.S.C.A. § 158(a). 28 U.S.C.A. § 158(a) (2007). In hearing an appeal from a bankruptcy court's order, the district court

-4-

reviews the bankruptcy court's findings of fact for clear error and that court's conclusions of law *de novo. Rembert v. AT & T Universal Card Servs. (In re Rembert)*, 141 F.3d 277, 280 (6th Cir.1998), cert. denied, 525 U.S. 978, 119 S.Ct. 438, 142 L.Ed.2d 357 (1998); *see also In re Caldwell*, 851 F.2d 852, 857 (6th Cir.1988). Mixed questions are to be separated into their component parts and reviewed under the appropriate standard. *Mayor of Baltimore v. W. Va. (In re Eagle-Picher Indus., Inc.)*, 285 F.3d 522, 527 (6th Cir.), cert. denied, 537 U.S. 880, 123 S.Ct. 90, 154 L.Ed.2d 137 (2002).

### DEBTOR MURRAY'S MOTION FOR SUMMARY JUDGMENT

The Motion presented three arguments in the alternative against the Claim pursuant to Rule 56 of the Federal Rules of Civil Procedure: first, that the Claim is equitably or statutorily barred; and, second, that the Claim should be dismissed for lack of standing for failure to join an indispensable party, an entity named "Patent Enforcement Fund, Inc." ("PEF"). Under the third argument, the Motion sought an estimation of the Claim pursuant to §§ 105(a), 502(c) and 1142 at $0 or not more than $10,400,000 for the purposes of distribution under the Liquidation Plan and for the purposes of calculating the proper amount of any reserve pending final disposition of the Claim, as further explained, *infra*.

In support, Debtor Murray submitted: 1) Motion for Summary Judgment (Bankruptcy Court D.E. 1482); 2) Statement of Undisputed Facts in Support of Motion for Summary Judgment (Bankruptcy Court D.E. 1483, incl. Exs. A-E) (Debtor's Statement"); 3) Memorandum in Support of Motion for Summary Judgment (Bankruptcy Court D.E. 1484) ("Debtor's Memorandum").

-5-

PROOF OF CLAIM: ALLOWANCE AND OBJECTION

Together, §§ 501 and 502 address the filing and allowance or valuation of a proof of claim.[4]  In approaching the task on review, the court views both §§ 501 and 502 in the light of the powers granted to the Bankruptcy Court by § 105(a)[5] to find a formula for determining the effect of indispensable party and time bar on the validity of Owens' proof of claim for a claim of infringement.

Section 501(a) of the Bankruptcy Code states, as relevant here: "A creditor . . . may file a proof of claim."  § 501 (emphasis added).  The court on review considers the Bankruptcy Court's determination regarding the time bar and co-ownership issues as presenting a pair of threshold questions regarding whether Owens' proof of claim may be deemed validly filed pursuant to § 501(a).  The co-ownership question addresses the "creditor" element of § 501(a), as defined in § 101(10) of the Code, which here is whether the creditor entity, as defined in §101(15), is comprised of one or more than one person, as defined in § 101(41).  §§ 101(10) (defining term "creditor" as an "entity"), 101(15) (defining term "entity" to include "person"), 101(41) (defining term "person" to include individual or corporation).  The time bar question addresses the "claim" element of § 501(a).

---

[4]  The Bankruptcy Rules at Part III address proofs of claim, the filing thereof and objections thereto.  Compliance with the Rules by either party was not at issue in the Bankruptcy Court and is not an issue on appeal.

[5]  "Bankruptcy courts, both through their inherent powers as courts and through the general grant of power in section 105, are able to police their dockets and afford appropriate relief."  2-105 Collier on Bankruptcy-15th Edition Rev. P 105.01 (Alan N. Resnick, Henry J. Sommer, eds.-in-chief) (2006).

-6-

If Owens' proof of claim survives either of the threshold analyses, but not both, then his proof of claim would be subject to analysis under § 502(b)(1). That section of the Code denies allowance to those claims which are unenforceable against the debtor under any applicable law, as was so pleaded in Debtor Murray's Third Omnibus Claims Objection (Bankruptcy Court D.E. 1164). § 502(b)(1); *see e.g. In re Madeline Marie Nursing Homes*, 694 F.2d 433, 437 (6th Cir. 1982) (first step in establishing claim is the determination of claim's existence under pre-bankruptcy conditions); *United States v. Sanford (In re Sanford)*, 979 F.2d 1511,1513 (11th Cir. 1992) (stating that a claim against the bankruptcy estate will not be allowed in a bankruptcy proceeding if the same claim would not be enforceable against the debtor outside of bankruptcy).

Only if the Owens Proof of Claim survives the paired threshold analyses, does the court proceed to the allowance and estimation of the value of Owens' claim pursuant to §§ 502(a) & (c).[6] Courts have observed that procedures for accomplishing the estimation of claims under 11 U.S.C. § 502(c) are not found in the Bankruptcy Code or Rules. *See In re Baldwin-United Corp.*, 55 B.R. 885, 899 (Bankr. S.D.Ohio 1985) (adopting *Bittner v. Borne Chem. Co. Inc.*, 691 F.2d 137, 135 (3d Cir. 1982) and noting that few courts had addressed the issue); *In re Federal Mogul Global, Inc.*, 330 B.R. 133 (Bankr. D.Del. 2005) (same). Therefore, to fulfill the

---

[6] Sections 502(a) and (c) state:
a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.
. . .
(c) There shall be estimated for purpose of allowance under this section
(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case; or
(2) any right to payment arising from a right to an equitable remedy for breach of performance.

purposes of the Code, bankruptcy courts are viewed to have broad discretion to employ a method that best fits the circumstances. *In re Wallace's Bookstores, Inc.*, 317 B.R. 720 (E.D.Ky. 2004) (collecting cases); *accord In re Windsor Plumbing Supply Co., Inc.*, 170 B.R. 503, 520 (Bankr. E.D.N.Y. 1994). "By definition, a claim is a 'right to a payment," . . . so [a pre-petition claim] will necessarily be based on some legal right that is external to the bankruptcy law." *In re Baldwin-United Corp.* 57 B.R. 751, 756 (Bankr. S.D. Ohio 1985).

As noted above, § 502(c)(1) states: "[t]here shall be estimated for purpose of allowance under this section any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case." See n.6, *supra.* It is not clear that Murray, in its Motion for Summary Judgment, exhibited the concern that the disposition of Owens' claim would unduly delay the administration of its bankruptcy case. The Motion did state that relief was sought under § 502(c) "[s]o that the administration of Murray's estate can expeditiously proceed." (Bankruptcy Court D.E. 1482 (Debtor's Mot. Summ. J. 1)).

### SUMMARY JUDGMENT ON INDISPENSABLE PARTY AND LACHES

Although Debtor Murray moved the Bankruptcy Court for alternative relief pursuant to § 502(c), the court reads the decision below to have addressed the summary judgment part of Debtor Murray's November 29, 2005 motion. Given the analysis above, the court views the Bankruptcy Court's focus on the Rule 56 part of Debtor Murray's motion as within the permissible bounds of the Bankruptcy Court's claims determination discretion. *In re Howell*, 4 B.R. 102 (Bankr. M.D. Tenn. 1980) (section 105 power is arguably broader than All Writs Statute). Further, the court views Appellant's argument that the Bankruptcy Court erroneously granted Debtor Murray's summary judgment motion as equivalent to an argument that the

-8-

Bankruptcy Court erroneously sustained Debtor Murray's objection to Owens' proof of claim, which was the underlying proceeding that in turn prompted Debtor Murray's Motion.

The Bankruptcy Court granted summary judgment in favor of Debtor Murray on two grounds, applying *Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (summary judgment standard) and *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 672-73 (Fed. Cir. 1990) (same). (C.L. 1-3). First, the Bankruptcy Court found that Owens failed to present competent evidence that PEF was not an indispensable party. (Jan. 11, 2006 Tr. 4 incorporated into the February 8, 2006 Bankruptcy Court Order; Bankruptcy Court D.E. 1626). Second, the Bankruptcy Court found that Owens failed to present competent proof related to his delay in filing his infringement claim sufficient to overcome the defense of laches and statute of limitations asserted by Debtor Murray. *Id.*

A.

PATENT ENFORCEMENT FUND, INC. AS CO-OWNER OF THE '108 PATENT

The Bankruptcy Court found that Owens could not support his claim without PEF joining in the claims process, relying on *Int'l Nutrition Co. v. Horphag Research Ltd.*, 257 F.3d 1324, 1331 (Fed. Cir. 2001) (citing *Schering Corp. v. Roussel-UCLAF SA*, 104 F.3D 341, 345 (Fed. Cir. 1997) for the proposition that the Patent Act places co-owners at each other's mercy, so that co-owners must mutually consent to sue for infringement (internal citations omitted)) and *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1468 (Fed. Cir. 1998). (C.L. 6).

The issue of a co-owner of the '108 patent arose in the claims proceedings when Debtor Murray presented evidence to the Bankruptcy Court, referencing docket entries in two pre-petition patent infringement actions filed by Owens in the U.S. District for the Eastern District of

-9-

Oklahoma, that Owens admitted that PEF held an ownership interest in the '108 Patent. (Bankruptcy Court D.E. 1483 Debtor Murray Inc.'s Statement of Undisputed Facts Supp. Mot. Summ. J. 3-5; Exs. A-8, A-9, B). That evidence indicated that infringement actions filed by Owens in the Eastern District of Oklahoma, one in 1997 and another in 2004, were dismissed without prejudice on the motion of Owens himself for his self-admitted failure to join PEF as an indispensable party. *Id*.

Owens' January 3, 2006 Surreply to Debtor Murray's Motion for Summary Judgment admitted that an agreement existed between himself and PEF, which conveyed a co-ownership interest in the '108 Patent to PEF. (Bankruptcy Court D.E. 1609). However, he argued that the agreement had been terminated by its terms. *Id*.

Owens' Surreply further attached documents, one entitled "Agreement" dated April 10, 1997 between Owens and PEF ("PEF Agreement"), and, the other, letter correspondence dated October 23, 1997 between Owens and PEF related to what Owens characterized as PEF's breach of the PEF Agreement and Owens' consequent termination of the PEF Agreement.[7] (Bankruptcy Court D.E. 1609).

It is necessary here to point out that the PEF Agreement contains two paragraphs numbered "10" and no paragraph numbered "9." The two paragraphs numbered "10" set forth the terms and procedure for termination.

The first paragraph 10 of the PEF Agreement sets forth the procedure for termination of the agreement. That procedure requires a written notice from Owens to PEF of PEF's "deficient

_____

[7] The admissibility of these documents was apparently never challenged in the Bankruptcy Court proceedings.

-10-

performance," a right to cure by PEF, and, if no cure is forthcoming, arbitration to resolve the dispute. If the arbitration does not resolve the charge of "deficient performance," the termination procedure is invoked. Most notably, the second paragraph 10 states that if the PEF Agreement is terminated in accordance with the first paragraph 10, PEF will continue to hold a five percent interest in the '108 Patent, and Owens will hold five shares of the common stock of PEF.

Therefore, by its terms, even evidence of termination of the PEF Agreement, that is, the decision of the arbitrator, would not be sufficient evidence to demonstrate the full defeasement of PEF's co-ownership of the '108 Patent. Paragraph 14 makes the agreement binding on heirs, executors, successors and assigns.

Subsequent to Owens' 1997 "termination" letter to PEF, and in light of the termination conditions set forth by the PEF Agreement, Owens sought and obtained dismissal without prejudice of both the 1997 and 2004 Eastern District of Oklahoma infringement actions based on his self-admitted failure to join PEF as an indispensable party, as noted above. (F.F. 14, 18). The Bankruptcy Court incorporated Owens' admissions in the Eastern District of Oklahoma regarding PEF's co-ownership to determine that Owens failed to join a PEF as an indispensable party in his proof of claim. (C.L.. 7-8).

The Bankruptcy Court found at the hearing that Owens offered only argument and no competent evidence to show that PEF's status as a co-owner of the '108 Patent had ever been terminated. (F.F. 19) (Tr. Jan. 11, 2006 12,14). That finding is clearly not error, given the ambiguity and conflict between Owens' contentions and submissions before the Bankruptcy Court and his admissions before the District Court in the Eastern District of Oklahoma.

Next, prior to the filing of the Order on February 8, 2006, the Bankruptcy Court docket

-11-

reflects an entry for an Amended Notice of Appeal filed by Owens on January 30, 2006.

(Bankruptcy Court D.E. 1628). The filed document is entitled "Appeal of Motion for Summary

Judgment Granted to Debtor, Murray, Inc.," which itself is dated January 19, 2006. There is also

filed under D.E. 1628 a document entitled "Affidavit," which contains the signature of Boyd Lee

Owens and is dated January 25, 2006. Further, the Bankruptcy Court docket reflects an entry of

a group of documents on March 3, 2006, constituting Owens' submission on appeal.

(Bankruptcy Court D.E. 1658). Included in that group of documents is the January 30, 2006,

Amended Notice of Appeal and Affidavit as filed under Bankruptcy Court D.E. 1628. In other

words, the Affidavit was filed twice: once before the Bankruptcy Court's February 8, 2006,

summary judgment order, and then again after the February 8th order as part of Owens'

submissions on appeal.

     In his January 25, 2006 Affidavit, Owens states, among other things, under the penalties

of perjury, that whatever rights PEF held in the '108 Patent, presumably pursuant to the PEF

Agreement, were returned to Owens "automatically" as a result of PEF's breach of the PEF

Agreement. (Bankruptcy Court D.E. 1628 & 1658). The court notes that there is no reference to

Owens' January 25, 2006 Affidavit in the Bankruptcy Court's Order of February 8, 2006.

     The January 25, 2006 Affidavit is the only submission Owens offers on appeal regarding

the indispensable party issue. Owens presents no legal authority in his Brief to show that the

Bankruptcy Court erred as a matter of law by finding that Owens lacked standing to file the

proof of claim without joining PEF. (Appellant Br. 13 - 15).

     Appellee argues that the Owens Affidavit dated January 25, 2006, filed on March 6, 2006

(Bankruptcy Court D.E. 1658), cannot be considered as part of the record on appeal because it

was filed after the date of the Bankruptcy Court's February 8, 2006, Order. (Appellees' Br. 11). That argument fails to address the presence of the same Affidavit filed on January 30, 2006 (Bankruptcy Court D.E. 1628). As noted above, the Bankruptcy Court did not express a view on the timeliness or untimeliness of the filing of the Affidavit.

Appellee offers two additional arguments against this court's consideration of the Owens January 25, 2006 Affidavit on review. (Appellees' Br. 12-13). First, Appellee contends that, while the PEF Agreement charges PEF with the obligation to re-assign its interest in the '108 Patent upon certain events, only a perfected assignment can restore full ownership to Owens. In support, Appellee directs the court to *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1580-81 (Fed. Cir. 1991) which discussed the determinative effect for a plaintiff's standing to sue for patent infringement of holding legal title conveyed by a present assignment, as compared to a mere equitable interest created by an agreement to assign title. (Appellee's Br. 12). In *Arachnid*, the petitioning plaintiff had not yet come into the ownership contemplated by an agreement and, therefore, lacked standing. *Id.* at 1581. Although here the question is in the reverse, *Arachnid* is helpful to the analysis.

Finally, Appellee contends that the implication in Owens' statement in his Affidavit--that, because PEF is defunct[8], PEF's interest in the '108 Patent has reverted to Owens--cannot be credited because the PEF Agreement contains no such reversionary right. (Appellee's Br. 12).

The PEF Agreement does not contain a reversionary provision that would operate when

---

[8] The PEF Agreement states that PEF is a Delaware corporation with its principal office in Connecticut; the PEF Agreement is silent as to the laws of which state govern. However, in Delaware, a dissolved corporation shall continue in existence for a term of three periods, or longer if the Court of Chancery directs, for the purpose of bringing or defending lawsuits related to the wind up of its business. Del. Code Ann. tit. 8, § 278 (West 2007).

-13-

one of the parties became "defunct," and, further, the termination provisions in the two paragraphs numbered "10," as described above, stand counter to Owens' contention that PEF's interest could "automatically" revert to Owens.[9]

In this Circuit, "it is 'accepted precedent' that after a motion for summary judgment has been filed, thereby testing the resisting party's evidence, a factual issue may not be created by filing an affidavit contradicting earlier deposition testimony." *Davidson & Jones Dev. Co. v. Elmore Dev. Co., Inc.*, 921 F.2d 1343, 1352 (6th Cir. 1991) (citing cases) (citations omitted). Here, Owens' Affidavit, whether or not it was considered by the Bankruptcy Court, cannot make the status of PEF as a co-owner of the '108 Patent as of the date of Owens' Proof of Claim a factual issue in dispute because it does not negate by itself Owens' admission in the District Court of the Eastern District of Oklahoma that PEF was an indispensable party (Bankruptcy Court D.E. 1484, Exs. A-8, 9). *Id.*; *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) (affirming district court refusal to deny summary judgment on basis of affidavit which contradicts earlier testimony). Given the stated terms noted above of the PEF Agreement at the first and second paragraphs numbered "10," that negation would require submission by Owens of some other evidence not in the form of his own affidavit.

The Federal Rules of Civil Procedure require the joinder of a party for a number of reasons applicable here. F.R.Civ.P.19(a). First, the disposition of Owens' claim cannot be complete in the absence of considering the interests of PEF. *Id.* Second, PEF's absence may

---

[9] The court notes that the Bankruptcy Court record reveals only that Owens presented the fact of the PEF Agreement in support of his contention that PEF was not an indispensable party. He did not ask the Bankruptcy Court to determine the status of the PEF Agreement or the status of PEF itself. Therefore, there is no reason for this court to reach those two issues on appeal.

-14-

impede its ability to protect any interest it has accruing from the '108 Patent. *Id.* Third, Debtor Murray may be left with an inconsistency in its obligations, if any, to Owens and PEF. *Id.*

Partly for the reasons argued by the Appellee and partly for the reasons set forth in the court's analysis above regarding the PEF Agreement, there is no error in the Bankruptcy Court's determination on the facts and the law that it could not conclude that PEF was no longer a co-owner of the '108 patent, and that, therefore, PEF was a necessary, and unnamed, party to Owens' proof of claim in the Murray bankruptcy case.

The Bankruptcy Court held that the unanswered questions surrounding the status of PEF as a co-owner of the '108 patent <u>alone</u> provided the sufficient and sole basis to grant Debtor Murray the full relief requested. (Tr. Jan. 11, 2006 4). This court agrees, because without a resolution of the status of the PEF Agreement in favor of Owens, it is clear that PEF must have joined in the proof of claim for the Owens Claim to have been filed by the "creditor" required in the § 501(a) threshold analysis set forth above. This conclusion has equal force whether viewed as a matter of compliance with the Federal Rules of Civil Procedure or the Bankruptcy Code. However, while this determination is fully sufficient to affirm the Bankruptcy Court's Order, the court will consider the remainder of the issues on appeal.

B.

1.

STATUTE OF LIMITATIONS

Under 35 U.S.C. § 286, the statute governing patents, recovery for damages for infringement is limited to the six years from the date of the filing of the infringement action. 35 U.S.C.A. § 286 (2007). The court first addresses whether any time remained under the statute of

-15-

limitations for Owens to pursue his infringement claim, as defined below, and finds that Debtor Murray admitted that a period of time remained. "The six years in [§ 286] begins with the date of suit and counts backward. The six years for laches begins with a patentee's knowledge of infringement and counts forward. Thus, the two periods in real time may be completely unrelated." *A.C. Aukerman Co. v. R.L. Chades Constr. Co.*, 960 F.2d 1020, 1035 (Fed. Cir. 1992).

The Bankruptcy Court granted Debtor Murray's request to bar Appellant from prosecuting his claim on the grounds of laches and statute of limitations. (Tr. Jan. 11, 2006 4; C.L. 12-23).

The Bankruptcy Court found that Appellant's patent expired on May 25, 1999. (F.F 16). Debtor Murray's Motion argued that, pursuant to the six-year statute of limitations for recovery for infringement as set forth in patent law, the last date on which Appellant could file a suit for infringement was May 25, 2005, the date that is six years after the date of the expiration of Owens' patent. (Debtor's Mem. Supp. Summ. J. 8); 35 U.S.C.A. § 286 (2007).

Debtor Murray's submissions to the Bankruptcy Court further stated that, measured from December 7, 2004, the date Owens filed his Proof of Claim, only the time period from December 7, 1998, the date that is six years prior to the date of the Proof of Claim, to May 25, 1999, the date on which the patent terminated, could be at issue in any patent infringement claim brought by Owens in the bankruptcy claims process. (Debtor's Mot. Summ. J. 2; Debtor's Statement of Undisputed Facts Supp. Summ. J. 17-19; Debtor's Mem. Supp. Summ. J. 13). Therefore, Debtor Murray conceded that Owens was entitled to bring an action seeking royalties for this approximate five and one-half month period of time.

-16-

The Bankruptcy Court 's Findings of Fact incorporated the declaration of an officer of Debtor Murray regarding the sales of walk-behind lawn mowers between November 29, 1998 and May 29, 1999, a period of time closely coincident with the period of time for which Debtor Murray conceded Owens could file an action under patent law considering the time remaining under the relevant limitations period. (F.F. .4; Bankruptcy Court D.E. 1483, Ex. E; Debtor's Mem. Supp. Summ. J. 14 - 15; referencing Bankruptcy Court D.E. 1483 Ex. E).[10]

The Bankruptcy Court appeared to recognize this admission of Debtor Murray without expressly addressing the five and one-half month period remaining under the statute. (C.L. 22). Consequently, it is not clear how the Bankruptcy Court considered this period of time in its final determination.

Related to the availability of the five and one-half month period is Debtor Murray's contention to the Bankruptcy Court that Owens' Proof of Claim could not be read as a complaint, applying F.R.Civ.P. 8, sufficient to toll the statute set forth by 35 U.S.C. § 286. (Debtor's Mem. Supp. Summ. J. 7 - 8; Reply Supp. Mot. Summ. J.). The import of this contention is that Owens' December 7, 2004 Proof of Claim could not be deemed to be an infringement complaint, so that the last date for Owens to file an infringement complaint, May 25, 2005, had passed without Owens filing a proper complaint. (*Id.*) Debtor Murray contended that Owens did not expressly assert that his Proof of Claim related to infringement of the '108 Patent until Owens filed his October 19, 2005 letter with the Bankruptcy Court. (*Id*. 9; Bankruptcy Court D.E. 1430). As noted above, on November 23, 2005, the Bankruptcy Court signed a Scheduling Order setting a

---

[10] The amount is stated to be $10,388,169.32. (Bankruptcy Court D.E. 1483, Ex. E, ¶ 4c).

hearing on Owens' claim for January 11, 2006.  (Bankruptcy Court D.E. 1473).

Claims in bankruptcy are valued as of the date of the petition.  *In re Federal Mogul, Inc.*, 330 B.R. 133, 155 (Bankr. D.Del. 2005).  This is a fundamental principle of bankruptcy.  *Sexton v. Dreyfus*, 219 U.S. 339, 334, 31 S.Ct. 256, 257 55 L.Ed. 244 (1911) (Holmes, J.); *see In re American HomePatient, Inc.*, 414 F.3d 614, 618-19 (6th Cir. 2005).  Of the equitable considerations underpinning this principle, measuring claims as of the date of the petition prevents disadvantaging creditors collectively, since the administration of a bankruptcy case cannot be instantaneous.  *In re Brints Cotton Mktg.*, 737 F.2d 1338, 1342 - 43 (5th Cir. 1984) (quoting *Nicholas v. U.S.*, 384 U.S. 678, 683, 86 S.Ct. 1674, 1679, 16 L.Ed. 853 (1966).[11]

When viewing Debtor Murray's admission regarding the viability of the five and one-half month period, the titled owner of the '108 Patent would putatively have had the opportunity in the claims objection proceedings in the Bankruptcy Court to present papers that could have qualified as a complaint alleging patent infringement as of the date of Debtor Murray's petition, a date within the period allowed under 35 U.S.C. § 286.  *In re Federal Mogul, Inc.*, 330 B.R. at 155 (in managing claims estimation, bankruptcy court is bound by legal rules which govern claim).

However, as determined above, without joining PEF, Owens had no standing to file a qualifying infringement complaint, which thereby renders the five and one-half months that remained under 35 U.S.C. § 286 of no avail.

2.

---

[11]  Although not raised by either party, § 108(c), addressing the extension of time for commencing a civil action on a claim against the debtor, would be applicable.

-18-

LACHES

The Bankruptcy Court found that Owens exhibited unreasonable delay in filing his infringement claim so that his presentation of proof was barred by laches. (C.L.17-21).

The presumption of laches affecting suit for patent infringement arises from a more than six-year delay in filing suit; the presumption is rebuttable. *A.C. Aukerman Co.*, 960 F.2d at 1035 ("The six years for laches begins with a patentee's knowledge of infringement and counts forward."). Undue delay and prejudice do not establish laches, but "[m]erely lay the foundations for the trial court's exercise of discretion." *Id.* at 1036. The patentee may offer proof directed to rebutting the laches factors, such as by showing either that "[t]he patentee's delay was reasonable or that the defendant suffered no prejudice or both." *Id.* at 1038 (citing *TWM Mfg. Co., Inc. v. Dura Corp.*, 592 F.2d 346, 349, 201 USPQ 433, 435 (6th Cir.1979) and *Maloney-Crawford Tank v. Rocky Mountain Natural Gas Co., Inc.*, 494 F.2d 401, 404, 181 USPQ 617, 618 (10th Cir. 1974)). The patentee's burden for rebuttal is only to "com[e] forward with sufficient evidence to raise a genuine factual issue respecting the reasonableness of its conduct" and not the greater burden of showing that the delay was not unreasonable. *A.C. Aukerman Co.*, 960 F.2d at 1039.

Among the justifications a patentee may offer to excuse delay is that the patentee was delayed from acting timely because of a dispute over ownership of the patent.[12] *Id.* at 1033

---

[12] Conclusion of Law 19 states that Owens argued at the January 11, 2006 hearing that an excuse for his delay was that he was unable to afford to hire an attorney. As noted above, Owens did not appear at the hearing. However, Debtor Murray 's Memorandum, filed November 29, 2005, refers to Owens offering the same argument in his 1997 suit. Based on the record the court cannot determine whether or how this contention of Owens came before the Bankruptcy Court. Nevertheless, the authority relied on by the Bankruptcy Court, *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1554 (Fed. Cir. 1996), supports the holding that such an excuse of an unreasonable delay is legally deficient.

-19-

(citing *Maloney-Crawford Tank*, 494 F.2d at 403. 181 USPQ at 618). As determined above, Owens has not demonstrated that he ever availed himself of the termination procedures provided for in the PEF Agreement or that success under the terms of the PEF Agreement would in fact return full ownership of the '108 Patent to him so that he would have standing to file an infringement action.

To demonstrate alternatively that Murray did not suffer prejudice, *A.C. Aukerman Co.*, 960 F.2d at 1038, Owens argues on appeal that he sent letters to Murray in 1986 and in 1994 and that those two notices were sufficient to place Debtor Murray on notice. (Appellant's Br. 13); (F.F. 11,12). Appellant thereby contends that Appellee had notice of the allegations of infringement and, therefore, could not have been prejudiced by Appellant's delay. In support of this argument, Appellant offers *Carpigiani v. Beatrice Foods, Co.*, 205 U.S.P.Q. 414 (N.D.Ill. 1979), where the court found no laches, in support.

In *Carpigiani* evidence was adduced at trial that not only had the plaintiff sent a letter placing defendant on notice of infringement, but the defendant had considered the notice, conducted an investigation, obtained guidance of counsel, and concluded that it was not at peril. 205 U.S.P.Q. at 421. Contrary to *Carpigiani*, Owens did not present any evidence to the Bankruptcy Court as to how Debtor Murray regarded his letters. It is a matter of record in the Eastern District of Oklahoma that Owens ended his infringement suit in 1998 without proceeding to trial. Moreover, this contention of Owens does not go to the necessary explanation of how his delay did not presumptively prejudice Murray. *A.C. Aukerman Co.*, 960 F.2d at 1033 (presumptive prejudice is either economic or evidentiary); *Id.* (defendant may suffer damages which earlier suit would have prevented); *Id.* (economic prejudice is a slippery issue to resolve);

-20-

*Id*. at 1034 (distinguishing laches from estoppel by stating that "[l]aches focuses on the reasonableness of the plaintiff's delay in suit . . . equitable estoppel focuses on what the defendant has been led to reasonably believe from the plaintiff's conduct.").

Appellant also argues that *Shorewood Packaging Corp v. Album Graphics, Inc.*, 189 U.S.P.Q. 743 (N.D.Ill. 1975), where summary judgment was denied, shows that the Bankruptcy Court erred in granting summary judgment on the issue of laches. In *Shorewood,* the only issue was estoppel and laches. *Id*. Here the central holding of the court below is based on the failure to join an indispensable party, the co-owner of the patent.

The facts in *Shorewood* are distinguishable from those presented to the Bankruptcy Court. In *Shorewood*, the patent had been granted to the plaintiff on February 11, 1969 and the infringement actions was commenced on January 7, 1974, within the six-year statute. *Id.* at 744. Here, Owens filed his claim after the entire term of the patent had run and after he had terminated his own more timely attempts, when measured from the date of his current claim, to pursue his infringement allegations. Noting that the infringement action arose within the first six years of the duration of the patent term, the *Shorewood* court stated: "It should also be noted that any delay in the prosecution of alleged infringement appears to have been for a much shorter period of time than is typically found in patent suits involving a laches defense." *Id.* at 745 (collecting cases) (internal citations omitted). Here, it is uncontested that a considerable period of time and delay is involved. The *Shorewood* court also stated: "And it should be noted that, as yet, [plaintiff] Shorewood has not had, or at least taken, the opportunity to attempt to explain any delay." *Id*. (citation omitted). Here, Owens had the opportunity to answer the charge of unreasonable delay in the Bankruptcy Court's claims process.

-21-

Further, the *Shorewood* court held that, even if the defendant unsuccessfully raised the defense of laches at trial, nevertheless "'this court is not compelled by any authority totally to disregard the prejudicial effect of delay in an action (if any) merely because it does not amount to an estoppel (or to laches).'" *Id.* at 746 (citing together *Siemens Aktiengesellschaft v. Beltone Electronics Corp.*, 381 F.Supp. 57, 184 U.S.P.Q. 433 (N.D.Ill. 1974) and "Memorandum Opinion," Case No. 73 C 296 at 9 (Nov. 13, 1975) and also *Minnesota Mining and Mfg. Co. v. Berwick Industries, Inc.*, 373 F.Supp. 851, 870, 182 USPQ 111, 123-124 (M.D. Pa. 1974).

Adding the *Shorewood* court's view of the significance of delay for prejudice, even within the statute period, to the context of the powers under § 105(a) as related to the purposes of § 502 as noted above, the Bankruptcy Court did not err in determining that Owens had failed to rebut the defense of laches. Inextricably related to the foregoing is Owens failure to demonstrate that he could remedy the defect in his claim caused by the unresolved status of the PEF Agreement, which on its own has the effect of either mooting his attempt to counter the equitable defense of laches or making the task insurmountable.

For the reasons stated above, as related to the reasonableness of delay or the lack of prejudice to Debtor Murray, Owens has not shown that the Bankruptcy Court erred in finding that he had not raised a genuine issue of fact through the presentation of competent evidence to overcome the equitable bar by laches of his claim.

3.

Lastly, § 101(5) of the Bankruptcy Code defines a claim in bankruptcy as a right to payment or a right to an equitable remedy that gives rise to a right to payment. 11 U.S.C.A. 101(5). As noted above, the statute of limitations scheme in U.S. patent law applies to the

-22-

recovery of money damages; equitable remedies, such as injunction, are available to the patentee during the life of the patent. *Naxon Telesign Corp. v. Bunker Ramo Corp.*, 686 F.2d 1258, 1262-63; n.6 (7th Cir. 1982); *see A.C. Aukerman Co.*, 960 F.2d at 1030. That is significant for the determination or valuation of Owens' Claim. As noted above, § 502(c) of the Bankruptcy Code concerns the estimation of disputed claims, that is, the estimation of the value of a right to payment. Logically then, the estimate of that part of Owens' claim for infringement for the period prior to December 7, 1998, considering the six-year limitation for money damages pursuant to 35 U.S.C. 286, must be $0.00.

The *Naxon* court held that the "[l]apse of the six years creates the presumption that the delay is unreasonable and shifts the burden . . . to the plaintiff who then must excuse the delay." 686 F.2d at 1265. However, even if the court were to reverse that part of the Bankruptcy Court's Order which effectively determined that Owens' claim for the period prior to December 7, 1998, was barred on the grounds of laches, Owens would still not be afforded a right to payment against Debtor Murray. 686 F.2d at n.6 (reciting that patent law provides that there shall be no recovery for infringement beyond the six years prior to the filing of the complaint; only equitable remedies for enforcement may be granted).

However, again the court holds that, beyond any failure by Owens to rebut the presumption of unreasonable delay or prejudice to Debtor Murray, his failure to resolve the status of the PEF Agreement is the fatal defect of the Owens Claim pursuant to either Rule 56 or § 501 of the Code.

-23-

II.

Appellant's remaining three points on appeal are stated as follows. First is whether Appellee can be found to have conspired with other members of the outdoor power equipment industry to defraud Appellant and is therefore liable to Owens pursuant to 18 U.S.C. 1964(c). Second is whether Appellee infringed on the '108 Patent. Third is whether Appellant has the right to a jury trial in the bankruptcy court on the issue of infringement. (Appellant's Br. iv - v, 7, 10, 16).

Appellee responds that the Bankruptcy Court decision addressed solely the issues of laches and indispensable party and made no findings of fact and conclusions of law on the remaining three points. (Appellee's Resp. 14).

A.

OWENS' CLAIM PURSUANT TO 18 U.S.C. 1964(c)

As Appellee argues, Owens did not file a proof of claim for damages caused by Debtor Murray's violation of 18 U.S.C. 1964(c). (Appellee's Resp. 14).

The court notes that Owens' Response in the claims proceeding in the Bankruptcy Court does contain the allegation that Debtor Murray engaged in a conspiracy to suppress Owens' safety invention, which conduct was then followed by infringement of the '108 Patent. (Resp. 1; Bankruptcy Ct. D.E. 1555).

In order to address the presence of that allegation in Owens' Response, the court considers if Owens improperly presents that issue here for the first time. Alternatively, the court can examine whether Owens' pleadings meet the standard for an allegation pursuant to 18 U.S.C. 1964(c). As shown below, the latter inquiry will dispose of both questions.

-24-

Owens alleges that Debtor Murray violated 18 U.S.C §§ 1961 - 1968, a criminal statute governing crimes committed by racketeer influenced and corrupt organizations, the so-called RICO statute, and hence Owens is entitled to the damages set forth in therein. 18 U.S.C.A. 1961 - 1968 (2007). Section 1962 enumerates the prohibited activities. § 1962(a) - (d). Section 1965 allocates venue for civil actions or proceedings under the statute to the district courts. § 1965. The statute provides for both criminal penalties pursuant to § 1963 and civil penalties pursuant to § 1964. Section 1964(c) provides standing for "[a]ny person injured in his business or property by reason of a violation" of § 1962. *Id.* A defendant found in violation of § 1962 is estopped in a civil action from denying the essential allegations of the offense. § 1964(d). There is nothing in the record to reflect a finding of a violation of this nature against Debtor Murray.

Appellant directs the court to *Beck v. Prupis*, 529 U.S. 494, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000). There, it was stated that "[o]ur task is to interpret §§ 1964(c) and 1962(d) [the conspiracy prong, separate from the racketeering prongs (§ 1962(a)-(c)] in conjunction, rather than § 1962(d) standing alone." 529 U.S. at 501, n.6; 120 S.Ct. at 1614, n.6. Informing that task was the observation that "[b]y the time of RICO's enactment in 1970, it was widely accepted that a plaintiff could bring suit for civil conspiracy only if he had been injured by an act that itself was tortious." 529 U.S. at 502, 120 S.Ct. 1614 (collecting cases) (internal citations omitted). Consequently, "'[i]t is the civil wrong resulting in damage, and not the conspiracy which constitutes the cause of action.'" *Id.* at 504,1615 (internal citation omitted).

Here, the alleged civil wrong causing damage is infringement of the '108 patent. (Appellants' Br. 8). Appellant does not argue, nor could he, that anything in the RICO statute displaces the command under Rule 19(a) for joining an indispensable party when asserting a

-25-

claim for patent infringement.  Therefore, no relief can be granted for Owens to pursue claims pursuant to 18 U.S.C 1964(c) and infringement in the Bankruptcy Court.

B.

RIGHT TO A JURY TRIAL IN BANKRUPTCY CLAIMS PROCEEDINGS

Owens does not dispute that he was not entitled to have a jury dispose of Debtor Murray's objection to his proof of claim.  (Appellant's Br. 17).  Owens directs the court to *WSC, Inc. v. The Home Depot, Inc. (In re WSC, Inc.)*, 286 B.R. 321, 328 - 29 (Bankr. W.D.Tenn. 2002) for its reliance on the Supreme Court's well recognized view that there is no entitlement to a jury in the bankruptcy claims resolution process.  (Appellant's Br. 17).  Naturally, the court agrees.

C.

OWENS' ALLEGATION OF PATENT INFRINGEMENT IN THE BANKRUPTCY CLAIMS PROCEEDING

As noted above, the court read the Bankruptcy Courts's determinations on indispensable party and time bar to be the threshold issues of whether Owens' proof of claim was validly filed pursuant to § 501 with the follow-on implications for allowance pursuant to § 502.  For the reasons explained above, the Bankruptcy Court correctly found that Owens' failure to comply with Rule 19(a) defeated the allowance of his proof of claim pursuant to § 501 as a threshold matter, and to which the determination on time bar simply added additional force.

Logically then, that same defect applies to defeat Owens' ability to prosecute his allegation of infringement, itself the threshold question issue in a claim for damages, and effectively renders moot his demand for a jury trial on remand to the Bankruptcy Court on the infringement allegation.

-26-

## III.

## CONCLUSION

For the reasons stated herein, the court finds no clear error in the Bankruptcy Court's findings of fact or conclusions of law.  Therefore the Order of the Bankruptcy Court will be affirmed in all respects.

Enter this 27th day of March 2007.

ALETA A. TRAUGER
U.S. District Judge